COURT OF APPEALS
DECISION
DATED AND FILED

July 14, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1825**

STATE OF WISCONSIN

Cir. Ct. No. **2024CV119**

IN COURT OF APPEALS
DISTRICT III

HUNTER CLINTON, JESSICA CLINTON, JOHN WILSON, ERIN WILSON, NICK FROEMMING, TARA FROEMMING, MARK SWANSON AND CALEY SWANSON,

PLAINTIFFS-APPELLANTS,

V.

VILLAGE OF SISTER BAY,

DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Door County: JENNIFER A. MOELLER, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 STARK, P.J. In 2023, the Village of Sister Bay amended the definition of short-term rental within its local zoning code to prohibit property owners from renting more than four bedrooms in their homes, and it has applied that change to all existing properties in the Village. Hunter and Jessica Clinton,

John and Erin Wilson, Nick and Tara Froemming, and Mark and Caley Swanson are four couples who own properties in the Village that contain five or more bedrooms and who claim that they were either already renting out their homes when the four-bedroom limit was adopted or were in the process of building homes with the intention to rent them.[1]

¶2      The Property Owners filed this lawsuit based on their contentions that WIS. STAT. § 66.1014 (2023-24),[2] colloquially known as the "Right to Rent" law, *see Wildwood Est., LLC v. Village of Summit*, 2025 WI App 47, ¶3 n.2, 418 Wis. 2d 22, 25 N.W.3d 581, gives homeowners the right to rent their entire homes and that, therefore, the Village's ordinance logically conflicts with state law. The circuit court disagreed with the Property Owners and granted summary judgment, on all but one of the issues, in favor of the Village. The Property Owners now appeal from that summary judgment, arguing that the court erred in several respects.

¶3      We conclude that the Village's four-bedroom limit on short-term rentals logically conflicts with the plain language of WIS. STAT. § 66.1014, which language we have previously interpreted, in *Wisconsin Realtors Ass'n v. City of Neenah*, 2025 WI App 49, 418 Wis. 2d 78, 25 N.W.3d 663, to bar restrictions on short-term rentals beyond timing limits alone. Given this conclusion, we do not reach the other issues presented by the Property Owners on appeal.[3] Accordingly,

---

[1] We will refer to the plaintiffs-appellants, collectively, as "the Property Owners." To the extent we must refer to the couples, we will do so by their surnames.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

[3] An appellate court need not address every issue raised by the parties when one issue is dispositive. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

we reverse the circuit court's grant of summary judgment in favor of the Village and remand for the court to issue a revised judgment declaring the four-bedroom limit within the definition of short-term rental in the Village's zoning code preempted and therefore void.

## BACKGROUND

¶4    In 2022, the Village adopted a Short-Term Rental Licensing Ordinance (the STRO), codified in VILLAGE OF SISTER BAY, WIS., CODE OF ORDINANCES ch. 18, art. IV (Aug. 20, 2025).[4]  The purpose of the STRO was "to establish licensing requirements which allow residential dwellings to be rented as a means to offer individuals a safe and enjoyable place to stay while visiting Sister Bay, while maintaining the quality of life of the residents and other visitors" and "to guarantee [that] the casual rental of a dwelling is compatible with the neighborhood in which it is located and does not disrupt the peace, health and safety, or visual appeal of Sister Bay."  CODE OF ORDINANCES § 18.51.  The STRO also required property owners to obtain an annual short-term rental license to rent their property.[5]  CODE OF ORDINANCES §§ 18.52, 18.54, 18.55, 18.56.

¶5    A year later, in June 2023, the Village passed Ordinance No. 2023-004, which stated that "after one year of administering" the STRO, "land use compatibility concerns have arisen which warrant looking at the zoning regulations applicable to Short-Term Rentals."  As a result, and as relevant to this

---

[4] All references to ch. 18 of the Village's CODE OF ORDINANCES are to the August 20, 2025 amendment.

[5] Short-term rentals must also obtain a license from the Wisconsin Department of Agriculture, Trade, and Consumer Protection, as well as a permit from the Door County Tourism Zone Commission.  CODE OF ORDINANCES §§ 18.52, 18.54, 18.55.

case, Ordinance No. 2023-004 amended the definition of short-term rental in the Village's zoning code to add the following applicable language: "In no case shall more than four bedrooms be rented, unless more bedrooms are authorized by the Plan Commission." *See* VILLAGE OF SISTER BAY, WIS., ZONING CODE § 66.2100 (Feb. 2026).[6] We will refer to this amended definition as "the four-bedroom limit." The four-bedroom limit applies "[i]n the R-1, R-3 and CS-1 zoning districts," ZONING CODE § 66.2100, which are the "Single-Family Residence District," the "Multiple-Family Residence District," and the "Countryside District," ZONING CODE §§ 66.0311, 66.0312, 66.0315.[7]

¶6      As mentioned above, the Property Owners wish to advertise and operate their homes as short-term rentals with more than four bedrooms. The Clintons own a five-bedroom home, located on Birchwood Drive, that they have been renting out on a short-term basis since early 2023. However, in July 2024, their rental license limited them to four bedrooms and twelve guests.

¶7      The Swansons also own a five-bedroom home, on Scandia Road, which they have been operating as a short-term rental since 2021. Like the Clintons, the Swansons' July 1, 2024 rental license set the "[m]aximum number of bedrooms to be rented" at four and the "maximum number of guests permitted" at twelve. The Swansons, however, sought an exception from the four-bedroom

---

[6] All references to the Village's ZONING CODE are to the February 2026 version.

[7] Within the same amendment to the zoning code, the Village also restricted short-term rentals to "a maximum of three (3) persons per legally permitted bedroom in existence at the time of this amendment," meaning that, in combination with the four-bedroom limit, short-term rentals are also capped at twelve people. *See* ZONING CODE § 66.2100. The Property Owners do not challenge the Village's twelve-person limit for short-term rentals.

limit from the Sister Bay Plan Commission, as authorized under the zoning code, but their request was denied following minimal discussion.

¶8      The Wilsons own a five-bedroom home on Fieldcrest Road that they also rent out on a short-term basis.  They began building this home in the fall of 2022.  When they were initially building their home, the Wilsons "intentionally designed the property with five bedrooms to make it more attractive to guests."  The Wilsons averred in a declaration that "[h]ad we known that short-term rentals would be limited to four bedrooms, we would have built the property differently" and that "[t]he additional cost for the finished basement which included the fourth and fifth bedrooms was approximately $20,000."  Like the Swansons, the Wilsons asked for an exception to the four-bedroom limit at a plan commission meeting, but their request was denied.[8]

¶9      The Froemmings own a six-bedroom home on Fieldcrest Road that they too began building in the fall of 2022 and that they rent out on a short-term basis.  Like the Wilsons, the Froemmings averred that "[t]he home was purposely designed and built with six bedrooms to make it more attractive to guests" and that "[t]he additional cost for the fifth and sixth bedrooms was in the range of" $15,000 to $20,000.

---

[8] Further, the record reveals that the Wilsons and the Swansons engaged in email discussions with Julie Schmelzer, Village Administrator and Zoning Administrator for the Village, regarding the four-bedroom limit.  According to the Swansons, Schmelzer told them that the zoning code sets "a max of 4 legal rooms, so one would have to be locked/not accessible to guests" and that their guests could not sleep on "pull out couches, etc."  Schmelzer also sent the Wilsons an email asking, "How will the fifth bedroom be restricted from use?  I need a statement indicating how it will be prevented access, e.g., will it be locked at all times?"

¶10     After attempting, unsuccessfully, to obtain assurances that the Village would not enforce the four-bedroom limit against them,[9] the Property Owners filed this lawsuit on September 17, 2024, seeking declaratory and injunctive relief.  They alleged eight causes of action: (1) violation of Wisconsin's "Right to Rent" law, WIS. STAT. § 66.1014; (2) violation of the Village's ZONING CODE §§ 66.0901, 66.0911; (3) violation of WIS. STAT. § 62.23(7)(h); (4) violation of the "Building Permit Rule"; (5) violation of WIS. CONST. art. I, § 1, based on their claim of "Retroactive Zoning"; (6) violation of the Village's general ordinances, based on "Administrator Schmelzer … telling short-term rental owners that their guests are not allowed to sleep on couches or futons during their stay"; (7) violation of WIS. CONST. art. I, § 1, "[g]iven that[] the 4-bedroom limit is 'arbitrary and unreasonable' as applied to them"; and (8) violation of WIS. CONST. art I, § 13 because the Village's "4-bedroom limit … operates as a taking of their property without just compensation."

¶11     The parties eventually filed cross-motions for summary judgment. The circuit court entered a written decision granting summary judgment to the Village and denying the Property Owners' motion for summary judgment on all but one claim—Claim 6.[10]   Thereafter, the court entered a final judgment dismissing the Property Owners' claims and declaring the following:

---

[9] The Property Owners sent a letter informing the Village of their position that the four-bedroom limit is unlawful as applied to them for several reasons and that Schmelzer's statement about no "pull out couches" was unlawful because no ordinance dictates the type of furniture that is allowed in short-term rentals.  However, the Property Owners contend that the parties were unable to resolve these issues outside of litigation.

[10] Regarding Claim 6, the Village has not cross-appealed, so that claim is not relevant to this appeal.

> [N]o Village ordinance allows the Village Administrator, or any other Village staff, to restrict what types of furniture guests of short-term rentals may sleep on, and any statements to that effect are unlawful and unenforceable. Likewise, no Village ordinance allows the Village Administrator, or any other Village staff, to require short-term-rental owners to lock any rooms in their homes, and any statements to that effect are unlawful and unenforceable. This declaration does not preclude the Administrator or Village from enforcing the four-bedroom limit, regardless of the furniture used.

¶12    The Property Owners appeal.[11]

## DISCUSSION

¶13    On appeal, the Property Owners present four issues for our review, but we reach only the first issue: whether the Village's four-bedroom limit violates

---

[11] Wisconsin Manufacturers and Commerce Inc. and the Wisconsin Realtors Association (WRA) each filed an amicus curiae brief in this case. Relevant to our holding, Wisconsin Manufacturers argues that the four-bedroom limit is preempted under four tests, which we note are set forth in *DeRosso Landfill Co. v. City of Oak Creek*, 200 Wis. 2d 642, 547 N.W.2d 770 (1996), and Wisconsin Manufacturers' arguments largely track the Property Owners' statutory interpretation arguments. The WRA, for its part, also argues, among other things, that Wisconsin's "Right to Rent" law "plainly protects [the Property Owners'] right to rent any part of their buildings, including any bedroom" and that *Wisconsin Realtors Ass'n v. City of Neenah*, 2025 WI App 49, 418 Wis. 2d 78, 25 N.W.3d 663, and *Wildwood Estate, LLC v. Village of Summit*, 2025 WI App 47, 418 Wis. 2d 22, 25 N.W.3d 581, "are controlling precedent requiring reversal." (Formatting altered.)

Wisconsin's "Right to Rent" law.[12]  We hold that the Village's four-bedroom limit on short-term rentals functions as a local prohibition on the otherwise lawful rental of a part of a residential dwelling, which is in logical conflict with the plain language of WIS. STAT. § 66.1014.  Therefore, pursuant to the analysis outlined in *DeRosso Landfill Co. v. City of Oak Creek*, 200 Wis. 2d 642, 547 N.W.2d 770 (1996), and our reasoning in *City of Neenah*, the Village's four-bedroom limit is void as preempted by § 66.1014.  The Village may not prohibit renters from using all of the bedrooms in a home licensed for short-term rental.

¶14     As our supreme court has explained, "municipalities may enact ordinances in the same field and on the same subject covered by state legislation," provided that the local "ordinances do not conflict with, but rather complement, the state legislation."    *DeRosso*, 200 Wis. 2d at 651 (citation omitted). Accordingly, "[a] municipal ordinance is preempted if (1) the legislature has expressly withdrawn the power of municipalities to act; (2) it logically conflicts with state legislation; (3) it defeats the purpose of state legislation; or (4) it violates the spirit of state legislation." *Id.* at 651-52 (footnote omitted).  If *any* of

---

[12] The Property Owners also argue that the Swansons and the Clintons "are grandfathered and exempt under multiple non-conforming use protections" "because they were already renting their properties as 5-bedroom short-term rentals before the 4-bedroom limit was adopted." *See Golden Sands Dairy LLC v. Town of Saratoga*, 2018 WI 61, ¶21, 381 Wis. 2d 704, 913 N.W.2d 118 ("The nonconforming use doctrine is implicated when lawful uses of land are made unlawful by a change in zoning regulations.  However, under the nonconforming use doctrine, the landowner is allowed to continue using the land in the now-nonconforming fashion." (citation omitted)).  Further, the Property Owners assert that the Wilsons and the Froemmings "are exempted under the Building Permit Rule," which is "a bright-line rule vesting the right to use property consistent with current zoning at the time a building permit application that strictly conforms to all applicable zoning regulations is filed." *See id.*, ¶18.  Finally, the Property Owners contend that "the circuit court rightly rejected [the Village's] argument that its 4-Bedroom limit is not a zoning ordinance," *see generally Zwiefelhofer v. Town of Cooks Valley*, 2012 WI 7, 338 Wis. 2d 488, 809 N.W.2d 362, which was one of the Village's arguments before the circuit court and which the court rejected as "not dispositive." (Formatting altered.)

these tests are met, "the municipal ordinance is void." *Id.* at 652. Whether a state statute preempts a municipal ordinance is a question of law that we review independently, benefiting from the circuit court's analysis. *See id.* Further, as applicable to this case, we employ the same standard in our review of the circuit court's decision on summary judgment. *See Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503. "A party is entitled to summary judgment when there are no genuine issues of material fact and that party is entitled to judgment as a matter of law." *Id.*; WIS. STAT. § 802.08(2).

¶15 The interpretation of a statute and an ordinance are also questions of law that we consider de novo. *See Milwaukee Dist. Council 48 v. Milwaukee County*, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153. Under the principles of statutory interpretation, we begin with the language of the statute or ordinance. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. The language "is given its common, ordinary, and accepted meaning," and it "is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶¶45-46. If the meaning of the language is plain, we apply the statute or ordinance as written. *Id.*, ¶46. If the language is ambiguous, we "consult extrinsic sources of interpretation, such as legislative history," to determine its meaning. *Id.*

¶16 Pursuant to these canons of statutory interpretation, we conclude that the Village's four-bedroom limit is preempted, at the very least, based on the second *DeRosso* test: the Village's zoning code logically conflicts with WIS. STAT. § 66.1014. *See DeRosso*, 200 Wis. 2d at 651. We begin with the language of § 66.1014, which states, in relevant part, that "a political subdivision may not

9

enact or enforce an ordinance that prohibits the rental of a residential dwelling for 7 consecutive days or longer." Sec. 66.1014(2)(a). The statute further defines "residential dwelling" to "mean[] any building, structure, or part of the building or structure, that is used or intended to be used as a home, residence, or sleeping place by one person or by 2 or more persons maintaining a common household, to the exclusion of all others." Sec. 66.1014(1)(b). "Thus," as we have stated previously, "the statute forbids local ordinances that prohibit the rental of 'any building[, structure, or part of the building or structure, that is used or] intended to be used as a home, residence, or sleeping place' for seven consecutive days or longer." *City of Neenah*, 418 Wis. 2d 78, ¶13 (citation omitted); *see also Wildwood Est.*, 418 Wis. 2d 22, ¶29 ("Under the Wisconsin 'Right to Rent' law, the legislature has declared that short-term rentals—even those fewer than six consecutive days—are permitted in single family residential districts when the community's general zoning code does not contain time restrictions on occupancy.").

¶17 Next, we consider the text of the Village's zoning code. The definition of short-term rental in § 66.2100 of the zoning code states, in pertinent part:

> A dwelling unit[13] in which sleeping accommodations are offered for pay to tourists or transients for brief periods of time. Said stays are predominantly less than 30 consecutive days in duration. These facilities are sometimes referred to as "vacation rentals." They do not include a boarding house which does not accommodate tourists or transients, bed & breakfast establishments or inns, or a hotel or motel with a central, on-site, staffed

---

[13] A "Dwelling Unit" is defined as "[a] group of rooms including at least a kitchen, sanitary facilities, and a bedroom; and providing living quarters for not more than one family." ZONING CODE § 66.2100.

> reservation desk, and on-site property management. For purposes of this land use, "rental period" shall mean a definite period of time, typically two (2) to seven (7) consecutive days, with a fixed commencement date and a fixed expiration date; and/or the length of time, in days, one party rents a dwelling unit in a consecutive seven day stretch of time. In the R-1, R-3 and CS-1 zoning districts, short-term rental properties shall be restricted in occupancy to a maximum of three (3) persons per legally permitted bedroom in existence at the time of this amendment, or at the time of the dwelling unit's establishment after the date of this amendment. Additional occupancy is permissible only upon Plan Commission approval. In no case shall more than four bedrooms be rented, unless more bedrooms are authorized by the Plan Commission.

ZONING CODE § 66.2100. Therefore, by the zoning code's plain language, and as relevant here, owners of single-family homes in the Village who seek to rent their property for fewer than 30 consecutive days at a time are strictly limited to renting out a maximum of 4 bedrooms in the home. Further, the "[i]n no case" language makes clear that even if the single-family home has more than four bedrooms available, a short-term renter cannot legally rent those additional bedrooms, absent the plan commission's discretionary approval.

¶18 The Property Owners argue on appeal that the Village's four-bedroom limit violates the plain language of WIS. STAT. § 66.1014. According to the Property Owners,

> [s]wapping the definition from [§ 66.1014](1)(b) into the main operative sentence in [para.] (2)(a), the statute reads as follows: "a political subdivision may not enact or enforce an ordinance that prohibits the rental of" "any … part of [a] building or structure[] that is used or intended to be used as a home, residence or sleeping place."

(Fourth and fifth alterations in original.) Given that the Property Owners' homes are all buildings "used or intended to be used as a home, residence, or sleeping place"; the fifth and/or sixth bedrooms are "part of" their homes; and those bedrooms are also "part[s] of the building … that [are] used … as a … sleeping

11

place," *see* § 66.1014(1)(b), the Property Owners assert that the four-bedroom limit is a straightforward violation of state law. The Property Owners further argue that subject to building code requirements, "[t]he far better interpretation of … § 66.1014, consistent with the definition of 'residential dwelling,' is that homeowners have a right to rent their *entire* homes, and their renters can sleep in any 'part' that they want."

¶19 In support of their position, the Property Owners rely on this court's decision in *City of Neenah*. In that case, and as relevant here, the WRA argued that an ordinance prohibiting owners of a residential property from renting that property unless it is their "primary residence" is contrary to WIS. STAT. § 66.1014. *City of Neenah*, 418 Wis. 2d 78, ¶¶1, 4. We agreed with the WRA, stating that the ordinance "says that the [c]ity will only grant the required permit to rent out a residential dwelling if it is the applicant's 'primary residence,'" and "[a]lthough it does not define the term 'primary residence,' the term clearly excludes some residential dwellings—those residences that are non-primary—and thus the ordinance prohibits short-term rentals of at least some residential dwellings." *Id.*, ¶14. Thus, by looking past the nominal labels and evaluating the functional operation of the language in the ordinance, we determined that the local ordinance "logically conflicts with [§ 66.1014's] prohibition against local limitations on the short-term rental of 'any' residential dwellings." *Id.*

¶20 We agree with the Property Owners that, like the ordinance at issue in *City of Neenah*, the functional operation of the Village's four-bedroom limit is that it "clearly excludes some residential dwellings"—i.e., the "part of the building or structure" containing the fifth or sixth bedrooms—"and thus the ordinance prohibits short-term rentals of at least some residential dwellings." *See id.*, ¶14; WIS. STAT. § 66.1014(1)(b). In other words, the four-bedroom limit operates to

12

prohibit an owner from using their property for a protected purpose—i.e., as a rental property—as it structurally exists, but the plain language of § 66.1014(1)(b) and (2)(a) protects the rental of the *entire* residential dwelling, including "part[s] of the building," not just a limited portion of it.

¶21    Accordingly, we reject the Village's suggestion that WIS. STAT. § 66.1014(2)(a) "bars only local measures operating as back-door prohibitions on renting, not reasonable regulations like the Village's four-bedroom limit, which does not prohibit the owner altogether from renting the property." The four-bedroom limit absolutely operates as a "back-door prohibition[] on renting," and, further, nothing in the language of § 66.1014 authorizes this type of piecemeal ban on portions of a residential dwelling. The definition of residential dwelling is broadly written in the statute to include "*any* building, structure, *or part of the building or structure*." *See* § 66.1014(1)(b) (emphasis added). Therefore, we concur with the Property Owners that "[a]s in [*City of Neenah*], the 'statutory definition' of residential dwelling 'leaves no room' for [the Village's] argument that it can prohibit the rental of some parts of a home and not others." *See City of Neenah*, 418 Wis. 2d 78, ¶15. The Village may not prohibit renters from using all of the bedrooms in a short-term rental home.

¶22    The Village's remaining arguments, which assert that there is no logical conflict between WIS. STAT. § 66.1014 and its four-bedroom limit, are unavailing. The Village correctly posits that § 66.1014 preserves its right to "enact an ordinance regulating the rental of a residential dwelling in a manner that is not inconsistent with the provisions of pars. (a) and (d)." *See* § 66.1014(2)(c).

The Village also correctly acknowledges that § 66.1014 "allow[s] and empower[s] local government regulatory licensing of rental activities." *See* § 66.1014(2)(d)2.[14]

¶23    The general authority of the Village to act within the realm of residential dwelling rentals is not in dispute, however.  At no point do the Property Owners challenge the Village's authority to require that they obtain a license to rent their property.  Therefore, the Village's arguments on these points are nonstarters.

¶24    Instead, the Property Owners appropriately question whether the Village's right to regulate short-term rentals is, under the circumstances of the four-bedroom limit, "inconsistent with the provisions of" WIS. STAT. § 66.1014(2)(a) and (d).  *See* § 66.1014(2)(c).  On that question, the Village contends that § 66.1014(2)(a) and (d)1. creates two limits.  First, the Village asserts that paragraph (2)(a) provides that "a political subdivision would not be allowed to enact an ordinance that would prohibit the rental of a residential dwelling for seven consecutive days or longer," and because the Village's four-bedroom limit "does not prohibit the rental of a residential dwelling *for 7 consecutive days or longer*," the Village's zoning code "does not invoke

---

[14]  WISCONSIN STAT. § 66.1014(2)(d)2. provides:

> 2. Any person who maintains, manages, or operates a short-term rental, as defined in [WIS. STAT. §] 66.0615(1)(dk), for more than 10 nights each year, shall do all of the following:
>
> a. Obtain from the department of agriculture, trade and consumer protection a license as a tourist rooming house, as defined in [WIS. STAT. §] 97.01(15k).
>
> b. Obtain from a political subdivision a license for conducting such activities, if a political subdivision enacts an ordinance requiring such a person to obtain a license.

14

[paragraph] (2)(a)." (Emphasis added.) The Village further claims that the four-bedroom limit does not violate the second limit, found in subdivision (2)(d)1., "because it does not regulate the number of days a property may be rented to fewer than 180 days per year, nor does it regulate the specific time when rentals occur." Therefore, argues the Village, "[b]ecause the … four-bedroom limit does not fall within either of the two express limits on local regulation, it does not violate § 66.1014."

¶25 The Village's argument lacks substantive merit because it focuses on the collateral issues of the duration and frequency of the rental in WIS. STAT. § 66.1014(2)(a) and (d) rather than on the gravamen of the Property Owners' challenge. As an initial matter, we note that neither of the parties suggest that the Village's four-bedroom limit involves the provisions in § 66.1014(2)(d)1. We agree that § 66.1014(2)(d)1. is not at issue in this case and, therefore, do not address it further.

¶26 With regard to WIS. STAT. § 66.1014(2)(a), as we outlined above, the Village's four-bedroom limit prohibits the rental, in the homes of the Property Owners or any home seeking to become a short-term rental with more than four bedrooms, of "part of the building or structure[] that is used or intended to be used as a home, residence, or sleeping place" *entirely*. *See* § 66.1014(1)(b), (2)(a); ZONING CODE § 66.2100. Because the ordinance imposes a total ban on the rental of those parts of the home, the prohibition is, by definition, "for 7 consecutive days or longer." *See* § 66.1014(2)(a).

¶27 As the Property Owners note, we rejected a similar argument in *City of Neenah*. There, we explained that the city's attempted distinction—i.e., time limits on residential rentals versus limits on ownership of rental property—"falls

15

apart with the statute's explicit language that local government cannot prohibit short-term rental of 'any' buildings that are 'residential dwellings.'" *City of Neenah*, 418 Wis. 2d 78, ¶15. Accordingly, we concluded that "[t]he statutory definition leaves no room for the [c]ity's suggestion that it can lawfully prohibit the rental of buildings not used as a primary residence so long as the rental agreements for those buildings comport with [WIS. STAT.] § 66.1014's timing requirements." *Id.*

¶28 Further, the Village opposes the Property Owners' plain language reading of WIS. STAT. § 66.1014. First, the Village argues that the Property Owners "attempt to manufacture a violation of § 66.1014 by creatively intermingling the definition of 'residential dwelling' from subsection (1)(b) into subsection (2)(a)." What the Village calls "creative[] intermingling," however, our supreme court calls statutory interpretation. As outlined in *Kalal*, "[s]tatutory language is given its common, ordinary, and accepted meaning, except that … specially-defined words or phrases are given their … special definitional meaning." *Kalal*, 271 Wis. 2d 633, ¶45. Said differently, we are required to, as the Village asserts, "[c]omingl[e] statutory language" in order to give the phrase "residential dwelling" in § 66.1014(2)(a) the special definition the legislature enacted in § 66.1014(1)(b).

¶29 Next, the Village argues that the Property Owners "ignore intra-statute language and context." Specifically, it contends that the Property Owners "ignore[] the limiting phrase in [WIS. STAT.] § 66.1014(2)(a) 'for 7 consecutive days or longer'" and that by doing so, they "rewrite the statute to focus on prohibiting any 'part' of the home, whereas the Legislative focus is on local bans of rental activities for 7 consecutive days or longer." We disagree with the Village's contention. As we explained above, by prohibiting the rental of the

16

extra bedrooms in a home *entirely*, the Village is prohibiting the rental of "part of" the home for much longer than seven days. *See* § 66.1014(1)(b); *see also supra* ¶¶20-21, 26-27.

¶30    Finally, the Village asserts that the Property Owners "overlook the phrase 'by one person or by 2 or more persons maintaining a common household, to the exclusion of all others' in [WIS. STAT. § 66.1014](1)(b)'s 'residential dwelling' definition." According to the Village, "there is no evidence in the record that [the Property Owners] have allowed someone else to have use of [part of the building or structure] 'to the exclusion of all others,' such as evidence of partial ownership or some kind of tenancy 'to the exclusion of all others.'"

¶31    We do not agree with the Village's interpretation of the statutory language. The phrase "by one person or by 2 or more persons maintaining a common household, to the exclusion of all others" is meant to clarify that a property is a "residential dwelling" when it functions as a private, single-family home rather than a commercial operation, like a hotel or a bed and breakfast. *See Household*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "household" as "[a] family living together" or "[a] group of people who dwell under the same roof"); *see also* ZONING CODE § 66.2100 (stating that the definition of short-term rental does "not include a boarding house which does not accommodate tourists or transients, bed & breakfast establishments or inns, or a hotel or motel with a central, on-site, staffed reservation desk, and on-site property management"). As the Property Owners argue, and we agree, "[t]hat phrase is intended to clarify that homeowners have the right to rent their homes to a *single tenant at a time*—not to rent each of their bedrooms to separate tenants, like a hotel or bed and breakfast." Accordingly, we also agree with the Property Owners that this "limitation is irrelevant here" because they are not attempting to "rent the bedrooms in their

homes to separate tenants." The definition of residential dwelling undoubtedly applies to the Property Owners' homes.[15]

¶32 In summary, we conclude that the Village's four-bedroom limit is in logical conflict with the plain language of WIS. STAT. § 66.1014, Wisconsin's "Right to Rent" law, and, therefore, the four-bedroom limit within the definition of short-term rental in § 66.2100 of the Village's zoning code is void as preempted by state law. Accordingly, we reverse the circuit court's grant of summary judgment in favor of the Village and remand for the circuit court to issue a revised judgment declaring that provision preempted and therefore void.

*By the Court.*—Judgment reversed and cause remanded with directions.

Recommended for publication in the official reports.

---

[15] In support of its position, the Village also argues that "the legislative preservation of local authority to regulate short-term rentals can be seen in how the legislature views short-term rentals as businesses and how the legislature removes local regulation in other instances." (Formatting altered.) Within its argument, the Village considers legislative history and compares other statutes to WIS. STAT. § 66.1014. We do not address the Village's arguments on this point, however, because "[w]hen the meaning of a statute is plain from its text, we need not inquire further." *See City of Neenah*, 418 Wis. 2d 78, ¶13.